**Elena CLASS et al.,**
**Plaintiffs-Appellees,**

v.

**Nicholas NORTON, Individually and as Commissioner of Welfare, State of Connecticut, Defendant-Appellant.**

No. 318, Docket 74–1812.

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1974.

Decided Dec. 20, 1974.

---

3. Circuit Rule 23 shall not apply.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn. (Robert K. Killian, Atty. Gen., State of Connecticut, of counsel), for defendant-appellant.

Marilyn K. Katz (Fairfield County Legal Services, Inc., Bridgeport, Conn.), James C. Sturdevant (Tolland-Windham Legal Assistance, Inc., Rockville, Conn., of counsel), for plaintiffs-appellees.

Before SMITH, HAYS and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The Commissioner of Welfare for Connecticut, Nicholas Norton, challenges on appeal the denial of his motion for relief from judgment, Fed.R.Civ.P. 60(b)(5),[1] by Judge Blumenfeld of the District of Connecticut. 376 F.Supp. 503 (1974). The order from which relief is sought enjoined the Commissioner to process applications for Aid to Families with Dependent Children (AFDC) within 30 days of an individual's filing such application and to pay benefits retroactive to the date of application to applicants determined eligible for AFDC assistance. Subsequent to the court's entry of the above order on June 16, 1972, the Department of Health, Education and Welfare (HEW), the federal agency charged with establishing criteria for state plans to qualify for federal financial assistance, amended its regulations as to the time allowed to process applications and the date from which an eligible applicant becomes entitled to benefits. 45 C.F.R. §§ 206.10(a)(3), (6). The Commissioner contended in his 60(b) motion that these amendments require revision

---

1. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

\* \* \* \* \* \*

(5) . . . it is no longer equitable that the judgment should have prospective application.

. . . . .

Fed.R.Civ.P. 60(b)(5). In the district court, the Commissioner also moved for relief from judgment under Fed.R.Civ.P. 60(b)(6), which authorizes relief from judgment for "any other reason [than those enumerated in (1) through (5)] justifying relief from the operation of the judgment." The appellant abandons his unsuccessful 60(b)(6) tack for purposes of this appeal.

of the court's two-part order—specifically, extension of the processing ceiling (from 30 to 45 days) and deferral of the date on which an eligible applicant becomes entitled to benefits (from date of application to the earlier of the date of authorization or 30 days after filing the application). The court declined to modify either portion of its prior order. We affirm the district court's denial of relief as to the retroactive benefits portion of its 1972 order, but reverse its refusal to grant relief from the processing deadline established in its prior order.

This appeal marks this court's second encounter in recent months with Connecticut's administration of its state plan under the federal government's AFDC program, 42 U.S.C. § 601 et seq. In our earlier decision, Class v. Norton, 505 F.2d 123, (2d Cir. 1974) (*Class 1*), we upheld with minor exception[2] the ruling on a motion for contempt by Judge Blumenfeld. That motion focused on the extent of Commissioner Norton's compliance with orders entered in June, 1972 by Judge Blumenfeld with regard to processing applications for AFDC assistance. The court denied the motion in form but, finding substantial non-compliance with its 1972 orders, reiterated those orders and required the Commissioner to take certain measures designed to enhance the likelihood of compliance in the future. Class v. Norton, 376 F.Supp. 496 (D.Conn. 1974).

■ In the present appeal, the Commissioner asks this court to modify two aspects of these prior orders in light of HEW amendments to regulations allegedly underpinning these portions of the orders. At the outset, then, we note that our decision in *Class I* does not preclude granting the relief for which the appellant now moves. One is bound to obey an order issued by a court with jurisdiction over the person and subject matter unless and until that order is reversed by appropriate judicial proceedings. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); United States v. United Mine Workers of America, 330 U.S. 258, 293–294, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Howat v. Kansas, 258 U.S. 181, 189–190, 42 S.Ct. 277, 66 L.Ed. 550 (1922); In re Sawyer, 124 U.S. 200, 220–221, 8 S.Ct. 482, 31 L.Ed. 402 (1888). Accordingly, a court may consistently hold a defendant in contempt for disobeying its order (or, as in *Class I*, grant the movants other proper relief) and decide in view of subsequent events substantially altering the situation to modify that order. The Commissioner's claim for 60(b) relief, therefore, is a matter which we approach unconstrained by our holding in *Class I*.

## I. PROCESSING APPLICATIONS WITHIN 30 DAYS

In ordering the Commissioner to process AFDC applications within 30 days of filing, the district court drew for its authority on 45 C.F.R. § 206.10(a)(3). As the regulation then read, 30 days was the maximum time allowed participating states to make eligibility determinations:

A decision will be made promptly on applications, pursuant to reasonable State-established time standards not in excess of 30 days for . . . AFDC. . . . Under this requirement, the applicant is informed of the agency's time standard in acting on applications, which covers the time from date of application to the date that the assistance check, or notification of denial of assistance or change of award, or the eligibility decision with respect to medical assistance, is mailed to the applicant or recipient.

. . .

HEW has since amended 45 C.F.R. § 206.10(a)(3) to extend the 30-day ceiling to 45 days:

A decision shall be made promptly on applications, pursuant to reasonable

---

2. The district court assessed attorneys' fees and costs against the appellant in both his official and individual capacities. We reversed with regard to the Commissioner's individual liability. 505 F.2d at 127–128.

State-established time standards not in excess of:

(i) 45 days for . . . AFDC. . . .

In moving for relief under Fed.R.Civ.P. 60(b)(5), the appellant contended that this change in the law rendered continued enforcement of the injunctive order inequitable. Pointing to "inexcusable and unjustified," 376 F.Supp. at 505, non-compliance with its 1972 orders, however—noncompliance with which the district court dealt at length in *Class I* —the court held that the equitable doctrine of clean hands, *see generally,* 2 J. Pomeroy, Equity Jurisprudence § 400 (5th ed. 1941), counseled denial of the requested relief. The court then reinforced its decision against the appellant by intimating, 376 F.Supp. at 506, that relaxation of a frequently exceeded 30-day ceiling might well mean not improvement in the welfare department's compliance record but only further postponement by the department of the date after filing on which it begins to review an application.

 Judge Blumenfeld's ruling is surely understandable in view of the welfare department's "substantial and widespread" non-compliance, Class v. Norton, *supra,* 376 F.Supp. 496 at 498, with the order from which relief is now sought. Nevertheless, the ruling cannot be allowed to stand, for it conflicts with a doctrine long recognized by the Supreme Court. In Pennsylvania v. The Wheeling and Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855), the Court was asked to enforce its injunction ordered in Pennsylvania v. The Wheeling and Belmont Bridge Co., 54 U.S. (13 How.) 518, 14 L.Ed. 249 (1852), directing elimination of the navigational obstruction created by a bridge across the Ohio River at Wheeling, Virginia. The 1852 order assumed that elevation of the bridge to a designated height would suffice to clear the route for navigation but indicated that removal of the bridge altogether would be ordered if the former measure provided inadequate relief. The Court's determination in 1852 that the bridge constituted an obstruction of navigation rested upon its construction of various acts of Congress. Within four months after the decision in *Wheeling and Belmont I,* Congress enacted legislation declaring the bridge to be a "lawful structure" and making it a post-road for the passage of the United States mail. In *Wheeling and Belmont II,* the Court, deferring to this change in the law fashioned by Congress, felt compelled to dissolve the injunction:

> So far, therefore, as this bridge created an obstruction to the free navigation of the river, in view of the previous acts of congress, they are to be regarded as modified by this subsequent legislation; and, although it still may be an obstruction in fact, is not so in the contemplation of law.

59 U.S. 421 at 430.

This doctrine of judicial deference to legislative revision of a statute upon which a prospective court order is based was recently reaffirmed in System Federation No. 91 v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961). In *System Federation,* the Court ordered modification of a consent decree proscribing union shop agreements. The decree was issued in 1945 when the Railway Labor Act prohibited union shop agreements; the Act was amended in 1951 to permit such agreements. In 1957, the defendant unions moved under Fed.R.Civ.P. 60(b) for modification of the 1945 decree to allow for agreements of this sort. The district court denied the motion, the Sixth Circuit affirmed, and, despite the unions' continued acts of hostility to non-union employees, the Supreme Court reversed for abuse of discretion in not giving due respect to Congress' amendment of the law underpinning the decree. Despite the "wide discretion" permitted district courts in 60(b) rulings to reconcile the policies of *res judicata* and the equities of changed circumstances,

> . . . discretion is never without limits and these limits are often far clearer to the reviewing court when

the new circumstances involve a change in law rather than facts. 364 U.S. 642 at 648, 81 S.Ct. 368 at 371. *See also*, International Ry. v. Davidson, 65 F.Supp. 58, 60 (W.D.N.Y.1945), and cases cited therein.

The principle of deference enunciated in *Wheeling and Belmont II* and *System Federation* is decisive of the instant case. There is a possible distinguishing factor: *Wheeling and Belmont II* and *System Federation* involved changes in a statute, whereas this case deals with an amended regulation. The regulations, however, have the presumptive force of law and we see no reason to accord lesser respect to a change in regulation than to one in statute, *cf.*, United States v. Obermeier, 186 F.2d 243, 247 (2d Cir. 1950), cert. denied, 340 U.S. 951, 71 S.Ct. 569, 95 L.Ed. 685 (1951); New York Foreign Freight Forwarders and Brokers Association, Inc. v. Federal Maritime Commission, 337 F.2d 289, 295 (2d Cir. 1964), cert. denied, 380 U.S. 910, 914, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965), and thus regard this distinction as immaterial. The principle's application to the instant case is plain. The district court required that the appellant process AFDC applications within 30 days of filing *because* the HEW regulations so required. Unlike that part of the court's order relating to retroactive payments, *see II, infra*, this 30-day ceiling relied for ·its force upon a regulation which has since been amended. In this instance, therefore, the amendment to the regulation directly undercuts the authority for the 1972 order. By failing to give proper recognition under Fed.R.Civ.P. 60(b)[3] to this change in applicable law, the district court was in error.

## II. PAYMENT OF BENEFITS TO DATE OF APPLICATION

In ordering that AFDC recipients be paid benefits retroactive to the date of application, Judge Blumenfeld sought to remedy a situation in which two persons could apply for AFDC benefits on the same day but begin to receive benefits on different dates because the welfare department determined their eligibility on different days. The court predicated relief on two independent grounds. First, different treatment of persons simultaneously applying for benefits is inconsistent with 45 C.F.R. § 233.20(a)(1), which requires states receiving federal financial assistance for their AFDC programs to determine "need and amount of assistance for all . . . recipients . . . on an objective and equitable basis. . . ." Secondly, this distinction among persons similarly situated constitutes irrational discrimination violative of the Equal Protection Clause of the Fourteenth Amendment.

On appeal, the Commissioner renews his claim in the district court that Fed.R. Civ.P. 60(b)(5) requires modification of this order because, in the language of the rule, "it is no longer equitable that the judgment should have prospective application." The alleged inequity ostensibly derives from HEW's revision of 45 C.F.R. § 206.10(a)(6), which establishes the maximum period of time after an application for assistance has been filed which a participating state may allow to run without recognizing an eligible applicant's right to receive benefits. Thus, the regulation in force at the time of the 1972 order read in relevant part:

> Entitlement will begin as specified in the State plan, which (i) for financial

**3.** The appellees rely upon Sullivan v. Houston Indep. School Dist., 475 F.2d 1071 (5th Cir.), cert. denied, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973), to justify the court's ruling as within its discretion. *Sullivan* involved a school district's promulgation of new regulations designed to satisfy an injunction under which it was operating; the issue was whether or not the mere promulgation of these *regulations* terminated *the need for the* injunction and required its dissolution. In declining to reverse a ruling denying modification of the existing injunctive order on the basis of this satisfaction rationale, the Fifth Circuit indicated that satisfaction of the injunction would be judged on the basis of enforcement of the regulations, not their promulgation alone. As should be clear, *Sullivan* and the instant case deal with very different problems: *Sullivan* with what constitutes compliance with an injunction; *Class II* with the appropriate scope of an injunctive order. They both deal with regulations, which is the beginning and end of their consanguinity.

assistance must be no later than the date of authorization of payment and, for purposes of Federal financial participation, may be as early as the first of the month in which an application has been received and the individual meets all the eligibility conditions,

whereas the regulation now provides:

Assistance shall begin as specified in the State plan, which:

(i) For financial assistance

(A) Must be no later than:

(1) The date of authorization of payment, or

(2) Thirty days in . . . AFDC . . . from the date of receipt of a signed and completed application form, whichever is earlier: *Provided*, That the individuals then met all the eligibility conditions, and

(B) For purposes of Federal financial participation, may be as early as the first of the month in which an application has been received and the individual meets all the eligibility conditions. . . .

■ The appellant's argument based on this change in law suffers from two basic flaws. First of all, since the amended regulation is *more* demanding of the state than the superseded regulation, it would be strange indeed to find a mandate in this amendment to require *less* of the state than was determined necessary when the prior rule was in effect. Secondly, and more fundamentally, any amendment of this regulation must be irrelevant to this court's review of the district court's ruling. For although the district court could be charged with abuse of discretion for failure to modify an existing order in light of a change in the law upon which the court relied, *see* I, *supra*, here there has been no such change in the law. That is, since Judge Blumenfeld's order in no way rested on the original 45 C.F.R. § 206.10(a)(6), any amendment of that regulation is *a fortiori* of no moment as concerns the validity of that order. As long as 45 C.F.R. § 233.20(a)(1) *or* the

Equal Protection Clause retains its present form, this order is insulated from modification by an appellate court on the basis of a relevant change of law.

■ This court is not free in effect to reverse, despite the time for appeal having run, any lower court order of continuing force with which it comes to disagree—a position in obvious conflict with the principles of finality underlying the doctrine of *res judicata*. As the Supreme Court stated in United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), "[w]e are not at liberty to reverse under the guise of readjusting." *See also*, Schildhaus v. Moe, 335 F.2d 529, 530 (2d Cir. 1964).

■ Having failed to perfect a timely appeal of the 1972 order, the appellant must again be denied, as he was in *Class I*, the benefits of plenary review of the merits of that order. *Cf.* Class v. Norton, *supra*, 505 F.2d 123, at 125. The validity of the district court's rationale for this part of its order is not open to question on this appeal. Since the court's unreversed rationale has not been undercut by the changes in law adduced by the appellant, we conclude that the district court correctly denied the Commissioner's 60(b)(5) motion with regard to modifying the date on which an eligible applicant's right to AFDC benefits vests.

The ruling below is reversed insofar as it denied relief from that portion of the 1972 order requiring AFDC applications to be processed within 30 days of filing. In accordance with the amendment of 45 C.F.R. § 206.10(a)(3) upon which this portion of the order was based, the 1972 order is hereby modified to allow the state 45 days for processing applications. On the other hand, since the injunction requiring payments to eligible applicants retroactive to the date of application did not depend on any law subsequently changed, the district court acted within its discretion in refusing to modify that part of its 1972 order.

Affirmed in part and reversed in part.