1996 SD 6

**Paul F. PORTER, Plaintiff and Appellee,**

v.

**Edna K. PORTER, now known as Kay Subbert, Defendant and Appellant.**

No. 19074.

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1995.

Decided Jan. 10, 1996.

Richard L. Bode, Rapid City, for plaintiff and appellee.

John K. Nooney, Timothy L. Thomas, Morrill Brown, Thomas & Nooney, Rapid City, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Kay Subbert, f/k/a Edna K. Porter, appeals from an amended order denying her motion to modify her divorce decree to allow her a portion of her former husband's military pension benefits. She also appeals from the original divorce decree dated September 14, 1981. We affirm the trial court's denial of the motion to modify. We are without jurisdiction to entertain Subbert's appeal from the original judgment.

### FACTS AND PROCEDURE

[¶ 2] The parties herein were married June 1971. In August 1971, Husband entered the United States Air Force. The parties were divorced on September 14, 1981. The judg-

ment and decree of divorce incorporated the parties' stipulation which did not address Husband's military pension benefits but included the following provision: "It is agreed that this Stipulation, upon approval of the Court, shall constitute settlement of all issues arising between the parties in this action." The stipulation further provided that "[i]t is stipulated and agreed that this agreement is entered into for the purpose of determining ... property division, and other matters arising out of this action[.]" Husband remained in the military service at least twenty years and began receiving a military pension benefit following his retirement from the service.

[¶ 3] In October 1994, Wife filed a motion for modification of child support and the divorce decree as it affects Husband's military pension. Husband did not resist modification of child support. Following oral argument on Wife's motion requesting a portion of Husband's military pension benefits, the trial court denied the motion. The trial court stated that granting Wife's motion would constitute a new judgment since the parties' divorce decree did not address Husband's military pension benefits and may also be beyond the rule provided in SDCL 15–6–60(b). The court entered an order denying the motion and subsequently, entered an amended order which reflected a date correction. Following entry of the amended order, Wife filed a notice of appeal on February 7, 1995. On April 4, 1995, Wife filed an amended notice of appeal appealing both the trial court's amended order and the September 1981 judgment and decree of divorce.

### STANDARD OF REVIEW

█ [¶ 4] The decision to grant or deny a motion under SDCL 15–6–60(b) rests with the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion. *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994); *Clarke v. Clarke*, 423 N.W.2d 818, 820 (S.D. 1988).

### ANALYSIS AND DECISION

[¶ 5] I. *"McCarty* Window"

[¶ 6] On June 26, 1981, the United States Supreme Court handed down its decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty*, the Court determined that military retirement benefits were the sole property of the retiree and held that the federal law precluded a state court from dividing military retirement benefits pursuant to state property laws. When the Porters were divorced on September 14, 1981, *McCarty* prohibited the trial court's consideration of Husband's potential military retirement benefits in making a marital property division. The stipulation incorporated into the Porters' divorce decree is silent on this subject.

[¶ 7] On September 8, 1982, Congress enacted the Uniformed Services Former Spouses Protection Act (USFSPA), 10 USC 1408 *et seq.* declaring that whether military retirement benefits should be considered in marital property division is a question of state law. 10 USC 1408(c)(1). The USFSPA was made retroactive to June 26, 1981, in order to undo the effects of the United States Supreme Court's decision in *McCarty. See Johnson v. Johnson*, 824 P.2d 1381, 1383 (Alaska 1992). In November 1990, Congress amended the USFSPA, explicitly prohibiting reopening divorce decrees entered prior to June 25, 1981 for the purpose of equitably distributing previously undivided military retirement benefits.

[¶ 8] The Porters were divorced in this "window" period between the issuance of *McCarty* holding military retirement benefits were not divisible as marital property and the retroactive effectiveness date of the USFSPA which again made military retirement benefits subject to state property laws. We recognized this "window" period in *Moller v. Moller*, 356 N.W.2d 909 (S.D.1984):

> The real effect of the Uniformed Services Former Spouses Protection Act is on divorce decrees granted or modified during the *McCarty* reign, June 26, 1981 to September 8, 1982. Those decrees certainly may now be modified in accordance with the new law[.]

*Id.* at 911 (citations omitted). *See also Wright v. Wright*, 427 N.W.2d 372 (S.D.1988) (recognizing no retroactive effect of the

USFSPA on divorce finalized prior to June 26, 1981).

[¶ 9] Our state law prior to *McCarty* was that military retirement benefits were treated like any other asset of the marriage and were subject to equitable distribution. *See* SDCL 25–4–44. *Moller*, decided after the USFSPA was passed, reaffirmed that military retirement pay constituted a marital asset. Couples who divorced prior to *McCarty* or after the enactment of the USFSPA were entitled to division of their spouses' military retirement pensions. However, spouses whose divorces were finalized during the "window" period between *McCarty* and the USFSPA were denied that right during that interval prior to *McCarty's* reversal by the USFSPA.

[¶ 10] Some jurisdictions have barred reopening of pre-USFSPA divorce decrees under the doctrine of res judicata. *See McBride v. McBride*, 112 Idaho 959, 739 P.2d 258 (1987); *Bishir v. Bishir*, 698 S.W.2d 823 (Ky.1985); *Andresen v. Andresen*, 317 Md. 380, 564 A.2d 399 (1989); *Marriage of Quintard*, 691 S.W.2d 950 (Mo.Ct.App.1985); *Allison v. Allison*, 700 S.W.2d 914 (Tex.1985) (where divorce decree made express disposition of military retirement benefits).

[¶ 11] The majority of states having considered this issue, however, whether by caselaw or by statute, permit reopening divorce decrees which fall within the "window" period. *See Beltran v. Razo*, 163 Ariz. 505, 788 P.2d 1256 (1990); 1983 CalStat ch. 775 § 1; *Smith v. Smith*, 458 A.2d 711 (Del.Fam. Ct. 1983); IllRevStat ch. 750 para 5/510.1; *Marriage of Waters*, 223 Mont. 183, 724 P.2d 726 (1986); *Castiglioni v. Castiglioni*, 192 N.J.Super. 594, 471 A.2d 809 (1984); *Koppenhaver v. Koppenhaver*, 101 N.M. 105, 678 P.2d 1180 (Ct.App.1984); *In re Marriage of Valley and Valley*, 97 Or.App. 95, 775 P.2d 332 (1989), *modified*, 99 Or.App. 252, 781 P.2d 1219 (1989), *cert. denied*, 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990), *Koepke v. Koepke*, 732 S.W.2d 299 (Tex.1987) (where divorce decree did not expressly award military retirement benefits), *Flannagan v. Flannagan*, 42 Wash.App. 214, 709 P.2d 1247 (1985). We now join this majority and hold that applying the doctrine of res

judicata here would subvert the intent of Congress and the plain meaning of the USFSPA which is to restore state law to what it was prior to the *McCarty* decision.

## [¶ 12] II. Timeliness of Wife's Motion

[¶ 13] Husband argues that Wife's motion to modify the parties' divorce decree to provide her with a portion of Husband's military pension benefits is untimely and should not, therefore, be considered. SDCL 15–6–60(b)(6) permits relief from the operation of a final judgment for reasons justifying relief but requires that the motion be made within a reasonable time after the judgment was entered. Husband and Wife were divorced on September 14, 1981. At that time Husband had been in the military service for over ten years; almost the entire time the parties had been married. Husband was not, however, eligible to receive military retirement benefits until approximately ten years later in 1991. Wife filed this motion to modify October 21, 1994.

[¶ 14] Whether one considers the period of delay in filing the motion to modify to be twelve years (the period of time between the enactment of the USFSPA until the filing of the motion) or, as urged by Wife, three years (the period of time between Husband's eligibility to receive military retirement benefits until the filing of the motion), we find Wife's motion for relief from judgment was untimely as not having been brought within a "reasonable time." Wife had knowledge of Husband's military service at the time of the USFSPA's enactment in 1982 and should have brought her motion to modify at that time. Every citizen is legally held to know the law. *Sioux Falls School Dist. v. S.D. Subsequent Injury Fund*, 504 N.W.2d 107, 109 (S.D.1993); *Hieb v. Opp*, 458 N.W.2d 797, 801 (S.D.1990); *Johnson v. Graff*, 68 S.D. 562, 5 N.W.2d 33 (1942). "Ignorance of the rules is not enough, nor is ignorance of the law." *Hanson v. Brookings Hosp.*, 469 N.W.2d 826, 829 (S.D.1991) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2858 (1973) discussing federal Rule 60(b)(1)). *Cf.* "Ignorance of legal rights does not toll a statute of limitations." *Lar-*

son v. American Wheel and Brake, Inc., 610 F.2d 506, 510 (8th Cir.1979).

[¶ 15] In *Anderson v. Somers*, 455 N.W.2d 219 (S.D.1990), a former wife brought a motion under Rule 60(b) to be relieved from an unsatisfactory property settlement incorporated into a divorce decree. She filed this motion over two and one-half years after entry of judgment and over a year after her former husband had left her. Wife entered into counseling for depression following her husband's departure. Even allowing a portion of this delay to be attributable to depression, we found Wife's continued delay of nine months before bringing her action to be untimely as not having been brought within a "reasonable time." *Id.* at 221–22.

[¶ 16] Wife urges on appeal that SDCL 15–6–60(b) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . ." and requests this Court to permit an independent action in accord with our holding in *Dunham v. First Nat'l Bank in Sioux Falls*, 86 S.D. 727, 201 N.W.2d 227 (1972). In *Dunham*, we acknowledged that an independent action under this section is not subject to the one-year period of limitations or "reasonable time" requirement found elsewhere in that section. *Id.* at 230. We noted "[t]he only limitation on the independent action in equity is laches." *Id.* We cautioned, however, that:

> [a]n independent action under the provisions of SDCL 15–6–60(b) is not a proceeding to be routinely considered by a trial court. . . . 'An independent action to set aside a judgment may not be maintained under ordinary circumstances. Resort may be had to it but rarely, and then only under unusual and exceptional circumstances.'

*Id.* at 230–31.

[¶ 17] A change in the decisional law subsequent to a final judgment is generally not considered to be exceptional circumstances under Rule 60(b) so as to allow reopening of the judgment. Most federal courts, applying the federal rule which is virtually identical to ours and from which ours was adopted, have so held. *Dowell v. State Farm Fire and Cas. Auto. Ins. Co.*, 993 F.2d 46 (4th Cir.1993); *Cooper v. Noble*, 33 F.3d 540 (5th Cir.1994); *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157 (5th Cir. 1990), *cert. denied*, 498 U.S. 829, 111 S.Ct. 89, 112 L.Ed.2d 61 (1990); *McKnight v. U.S. Steel Corp.*, 726 F.2d 333 (7th Cir.1984); *Lepore v. Ramsey*, 149 F.R.D. 90 (D.Md.1993); *Title v. U.S.*, 263 F.2d 28 (9th Cir.1959), *cert. denied*, 359 U.S. 989, 79 S.Ct. 1118, 3 L.Ed.2d 978 (1959); *U.S. v. City of Milwaukee*, 441 F.Supp. 1377 (D.C.Wis.1977); *Class v. Norton*, 376 F.Supp. 503 (D.C.Conn.1974), *aff'd in part, rev'd in part*, 507 F.2d 1058 (2nd Cir.1974); *Brown v. Clark Equipment Co.*, 96 F.R.D. 166 (D.C.Me.1982); *Loucke v. U.S.*, 21 F.R.D. 305 (D.C.N.Y.1957).

[¶ 18] However, in *In re Marriage of Waters*, 223 Mont. 183, 724 P.2d 726 (1986), the Montana Supreme Court determined that although a change in the decisional law did not represent extraordinary circumstances to justify reopening of a final marital dissolution decree, "[t]o forbid those spouses who were divorced during [the "window"] period from obtaining a modification of their decrees would create a category of people who were denied substantial rights solely because of the unfortunate time within which their decrees happened to be made final." *Id.* at 729–30. The court emphasized the limited nature of its decision but found it to be consistent with decisions in other jurisdictions regarding the "window" period between *McCarty* and the USFSPA. *See Flannagan, 42 Wash.App. 214*, 709 P.2d 1247; *Smith*, 458 A.2d 711; *Koppenhaver*, 678 P.2d 1180; *Castiglioni*, 471 A.2d 809. The Montana court did not stop its analysis there, but continued to address the issue of whether Wife's motion was filed within a reasonable time, acknowledging that this issue was dependent on the facts of each case. *Waters*, 724 P.2d at 730. The court concluded a delay of just two years *after the effective date of the USFSPA* and which did not prejudice the husband was timely.

[¶ 19] We have stated the only limitation to an independent action under SDCL 15–6–60(b) is laches. *Dunham*, 201 N.W.2d at 230. The defense of laches must be affirmatively pled. SDCL 15–6–8(c). Husband raised this defense in his Resistance to Mo-

tion for Modification. In *Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 240 N.W.2d 102 (1976), we noted "[l]aches does not depend on the passage of time alone; the plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." *Id.* at 278, 240 N.W.2d at 110. We hold that Wife's delay in filing the motion to modify, twelve years after the enactment of the USFSPA and ten years after our decision in *Moller* notifying her of her rights regarding the military pension, demonstrates a lack of diligence in preserving her rights. *See In re Marriage of Samson*, 245 Mont. 464, 802 P.2d 1241 (1990) (modification action filed five years after court decision notifying Wife of her rights barred by doctrine of laches).

### [¶ 20] III. Notice of Entry

[¶ 21] In appealing the original judgment and decree of divorce, Wife claims notice of entry was never filed following judgment and decree of the original divorce action in September 1981. Wife cites SDCL 15–26A–6 * and *Kallstrom v. Marshall Beverages, Inc.*, 397 N.W.2d 647 (SD1986) to support her argument that since notice of entry was never filed, the time for appealing that judgment never commenced to run, therefore, her appeal from the original action is timely.

[¶ 22] In *Kallstrom*, we held that, notwithstanding actual notice by mail to the adverse party of the trial court's final judgment, "[w]ithout a written notice of entry, the sixty days do not commence to run." *Id.* at 650. We discussed this requirement recently in *Sudbeck v. Dale Electronics, Inc.*, 519 N.W.2d 63 (S.D.1994), a case brought under the Administrative Procedures Act, by comparing the strict notice of appeal requirements of SDCL 15–26A–6 with SDCL 1–26–31 which does not contain such a requirement. *Id.* at 66–67.

[¶ 23] In *Kallstrom*, the settled record contained no evidence that a certificate of service or filing was ever made with the Clerk of Courts. The present case differs from *Kallstrom* in that here, the signed Admission of Service, Stipulation, and Decree of Divorce were all timely filed with the Meade County Clerk of Courts. Our review of the settled record indicates the Stipulation and the Decree of Divorce were filed with the Meade County Clerk of Courts September 14, 1981. Wife received a copy of the divorce decree by certified mail and signed an Admission of Service on September 16, 1981, indicating receipt. The record further reflects this Admission was filed with the Meade County Clerk of Courts October 6, 1981.

[¶ 24] In *Canton Concrete Products Corp. v. Alder*, 273 N.W.2d 120 (S.D.1978), we held the mailing of a certified copy of an order of dismissal constituted written notice of the filing of the order under SDCL 15–26–2 (repealed 1980). *Id.* at 122. This Court recognized in *Kallstrom* that the language of SDCL 15–26–2 (repealed 1980) is identical to the first paragraph of SDCL 15–26A–6; both statutes derive from the same source, SDC 33.0702. *See also State v. Kneeland*, 73 S.D. 73, 39 N.W.2d 281 (1949) (certified copy which showed the filing date having been served was written notice of the filing of the order in compliance with the statute). This Court has also held that by filing a notice of appeal prior to receipt of a notice of entry of judgment, appellant waives his right to such notice. *In re T.C.*, 278 N.W.2d 452, 454 (S.D.1979); *Labidee v. City of Pierre*, 43 S.D. 31, 177 N.W. 499 (1920).

[¶ 25] We hold the filing of the divorce decree, stipulation, and admission of service with the Clerk of Courts and Wife's actual notice by certified mail, after the decree of divorce had been signed and filed, satisfied the statutory requirements in this case and set the appeal time running. Wife is precluded from appealing from the original judgment nearly fourteen years later.

[¶ 26] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

---

* This statute provides in part: "An appeal from the judgment must be taken within sixty days after the judgment shall be signed, attested, filed and written notice of entry thereof shall have been given to the adverse party."